UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CADE NORDE,<br>   Plaintiff,<br>v.<br>CENTER FOR AUTISM AND RELATED DISORDERS, LLC,<br>   Defendant. | Case No. 22-cv-00639-DMR<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 18 |

Plaintiff Cade Norde filed this putative class action against her former employer Center for Autism and Related Disorders, LLC ("CARD") alleging violations of her privacy rights after CARD suffered a data breach. CARD now moves to compel arbitration and dismiss the case. [Docket No. 18 ("Mot.").] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the court grants the motion and administratively closes this action pending the decision of the arbitrator.

I.  **BACKGROUND**

CARD is a California corporation that provides healthcare, remote clinical services, training programs, and specialized outpatient services at 221 locations in 24 states. Compl. ¶¶ 24-25 [Docket No. 1.] Norde was a former CARD employee from June 2018 to June 2019. Declaration of Julie Eveland ("Eveland Decl.") ¶ 2 [Docket No. 18-1.] In October 2020, CARD announced that it was the victim of a cyberattack in which "highly sensitive" personal health information, personally identifiable information, and financial information was accessed. *Id.* ¶¶ 2, 36. This information included clinical and treatment information, contact information, dates of birth, and insurance details. *Id.* ¶ 35. CARD had collected this information from putative class members, including Norde, "in connection with their employment or receiving healthcare

services." Compl. ¶¶ 5, 15-17.

Norde claims that her highly sensitive information was exposed in the data breach because CARD stored or shared this information. *Id.* ¶¶ 18, 35. She claims further that CARD failed to comply with its statutory obligations under the laws such as the Health Insurance Portability and Accountability Act ("HIPAA") and the California Confidentiality of Medical Information Act ("CMIA"), industry standards, and its own assurances and representations that it would keep this information confidential. *Id.* ¶¶ 38, 42-47. She seeks to certify a nationwide class of individuals whose information was also exposed during the breach, including a subclass of California residents. *Id.* ¶ 27. Norde alleges claims for CMIA violations, negligence, invasion of privacy, breach of confidence, implied contract and the implied covenant of good faith and fair dealing, California's Unfair Competition Law, and unjust enrichment.

When Norde was hired, the parties signed an arbitration agreement. Eveland Decl. ¶ 3; *see* Eveland Ex. A ("Agreement") [Docket No. 18-2.] It is CARD's standard practice for all employees to sign an arbitration agreement during their onboarding process. *Id.* ¶ 3. Norde's signed agreement formed part of her personnel file. *Id.* ¶ 4.

The agreement expressly says at the top of the page "ARBITRATION AGREEMENT." Agreement at 1. Immediately following the title is the following introduction in capital letters:

> **PLEASE NOTE THAT THIS AGREEMENT HAS ARBITRATION & CLASS ACTION WAIVER TERMS THAT GIVE UP THE RIGHT TO A COURT HEARING OR A JURY TRIAL OR TO PARTICIPATE IN A CLASS ACTION. ARBITRATION IS MANDATORY AND IS THE EXCLUSIVE AND ONLY REMEDY FOR ANY AND ALL DISPUTES. PLEASE CAREFULLY READ SECTIONS 2, 3, AND 8.**

Agreement at 1 (emphasis in original). The Agreement provides:

> If any disagreement comes up between the Company and You as stated in section 2, then We will present the disagreement for binding determination before a retired judge selected from JAMS, Inc. or any similar organization that both of Us agree to.

Agreement § 1. Next, the Agreement states that it covers all possible claims between the parties, including the "issue of whether or not a dispute is arbitrable," as follows:

> <u>Claims Covered by this Agreement</u>. The claims covered by this Agreement are all claims and causes of action that the Company may

2

> have against You or that You may have against the Company or its officers, directors, employees, investors, owners, shareholders, and agents, arising out of or related to the employment relationship between Us and otherwise, including, but not limited to, (i) the interpretation, validity, or performance of any employment agreement . . . or any proprietary information and inventions agreement or confidentiality agreement . . . , (ii) claims for breach of any contract or covenant (express or implied), (iii) tort claims, (iv) claims for discrimination and/or harassment . . . , (v) claims for wrongful termination . . . , (vi) claims for failure to prevent discrimination or harassment, for failure to engaged in the interactive process, and for failure to reasonably accommodate any actual or perceived disability, (vii) claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, including, but not limited to, claims arising under [sixteen enumerated federal and state laws and regulations], or (viii) the issue of whether or not a dispute is arbitrable.

Agreement § 2. The parties also expressly waived their right to pursue their claims as a class action. Agreement § 3 ("Class Action Waiver").

The Agreement further provides that:

> **THE PARTIES UNDERSTAND THAT BY AGREEING TO BINDING ARBITRATION THEY ARE GIVING UP THEIR RIGHTS THEY MAY OTHERWISE HAVE TO LITIGATE THROUGH A COURT, TO HAVE A TRIAL BY A JUDGE OR A JURY, TO BE PARTY TO A CLASS OR REPRESENTATIVE ACTION, AND TO ALL RIGHTS OF APPEAL. . . .**

Agreement § 8.

CARD now moves to compel arbitration of Norde's claims in accordance with the agreement. Norde filed an opposition, to which CARD replied. [Docket Nos. 23 ("Opp'n"), 24 ("Reply").]

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs written arbitration agreements affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001). Enacted for the purpose of enforcing written arbitration agreements according to their terms, the FAA embodies a fundamental "first principle" that "arbitration 'is a matter of consent, not coercion.'" *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1414 (2019) (quoting *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010)). Section 4 of the FAA ensures that "private agreements to arbitrate are enforced according to their terms," *Stolt–Nielsen*, 559 U.S. at 682, by expressly authorizing a party to an arbitration agreement to petition a United States district court

for an order directing that "arbitration proceed in the manner provided for in such agreement," 9 U.S.C. § 4.

The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The final clause, known as the "savings clause," "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability," but "offers no refuge for 'defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4).

"In deciding whether to compel arbitration under the FAA, a court's inquiry is limited to two 'gateway' issues: '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If both conditions are met, 'the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms.'" *Id.* (quoting *Chiron*, 207 F.3d at 1130).

The parties can also "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). "[T]hese gateway issues can be expressly delegated to the arbitrator where the parties clearly and unmistakably provide for it." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999-1000 (9th Cir. 2021). Where "delegation provisions clearly and unmistakably delegated the question of arbitrability to the arbitrator for all claims," the court is required to enforce . . . agreements 'according to their terms'" and "let an arbitrator determine arbitrability." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016). Where a party does not challenge "the delegation provision specifically" but rather the

4

1  enforceability of the agreement to arbitrate claims "as a whole," the court "must enforce" the

2  delegation clause and "leav[e] any challenge to the validity of the [a]greement as a whole for the

3  arbitrator." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72-73 (2010).

### III.    DISCUSSION

CARD moves to compel arbitration of Norde's claims because the Agreement applies to violations of federal and state laws, and tort and negligence claims that arise out of her "employment relationship" and a "confidentiality agreement." Mot. at 6-7; *see* Agreement § 2. Norde does not dispute the existence of the Agreement nor that she signed it. Rather, she contests the scope and enforceability of the Agreement. Specifically, Norde argues that her claims do not arise out of her employment relationship because they deal with a data breach that occurred after she was no longer employed, and the language of the Agreement states that it only applies to employment-related matters. Opp'n at 3-4. She also argues that the Agreement is procedurally and substantively unconscionable and thus unenforceable.[1]

The Agreement requires arbitration of all disputes enumerated in Section 2, which encompasses for "all claims . . . including . . . the issue of whether or not a dispute is arbitrable." Agreement §§ 1, 2(vii). Section 2(vii) therefore clearly and unmistakably delegates the question of arbitrability of a claim or issue to the arbitrator. *See Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (finding that "language[] delegating to the arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration clause, constitutes 'an agreement to arbitrate threshold issues concerning the arbitration agreement'" (quoting *Rent-a-Ctr.*, 561 U.S. at 68)).

Neither party disputes the existence of this delegation clause, and Norde does not challenge the enforceability of the clause specifically. *See* Mot. at 7 n.2; Opp'n at 3-4; Reply at 4-5. Instead, Norde challenges the enforceability of the Agreement as a whole. However, the Agreement's delegation clause means that her issues relating to the scope and enforceability,

---

[1] For example, she argues that the Agreement is procedurally unconscionable because it is a contract of adhesion and a "form contract" that Norde played no part in drafting, nor did she have a chance to revise it. Opp'n at 6. As to substantive unconscionability, she argues that the Agreement is so expansively drawn that it is one-sided. Opp'n at 7.

including unconscionability, of the Agreement must be addressed by the arbitrator, not this court. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1132-33 (9th Cir. 2015) (where plaintiff "failed to 'make any arguments specific to the delegation provision,'" the court "need not consider" claim that arbitration clause in an employment agreement was unconscionable "because it is for the arbitrator to decide in light of the parties' 'clear and unmistakable' delegation of that question" (quoting *Rent-A-Ctr.*, 561 U.S. at 73-75)). "In order to have the federal court address h[er] unconscionability challenge, [Norde] would have had to argue that the agreement to delegate to an arbitrator h[er] unconscionability claim was itself unconscionable." *Brennan*, 796 F.3d at 1133 (citing *Rent-A-Ctr.*, 561 U.S. at 74)).

CARD also moves to dismiss the action or in the alternative, to stay the action in its entirety pending the completion of arbitration proceedings. Where a dispute is subject to arbitration under the terms of a written agreement, the district court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, although the Ninth Circuit has held that courts have discretion under Section 3 to dismiss claims that are subject to an arbitration agreement, *Sparling v. Hoffman Const. Co., Inc*., 864 F.2d 635, 638 (9th Cir. 1988). The court finds it appropriate to stay this action pending the outcome of the parties' arbitration proceedings. For case management reasons, the court will accomplish this by administratively closing the case. To reopen the case, the parties are directed to file a joint status report within two weeks of the completion of any arbitration.

## IV. CONCLUSION

For the foregoing reasons, the court grants CARD's motion to compel arbitration and stays this action in its entirety pending the final resolution of the arbitration. The clerk shall administratively close the case. The parties may reopen the case by filing a joint status report within two weeks of the completion of any arbitration.

**IT IS SO ORDERED.**

Dated: August 22, 2022

Donna M. Ryu
United States Magistrate Judge

6